UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
ORANNA BUMGARNER FELTER,        )
et al.,                         )
                                )
          Plaintiffs,           )
                                )
     v.                         )      Civil Action No. 02-2156 (RWR)
                                )
GALE NORTON, et al.,            )
                                )
          Defendants.           )
_____)
```

MEMORANDUM OPINION

Asserting they are "mixed-blood" members of the Ute Band of Indians, plaintiffs filed this suit to address injuries suffered as a result of the defendants' alleged wrongful termination of plaintiffs' status as federally recognized Indians under the Ute Partition & Termination Act ("UPA"), 25 U.S.C. §§ 677-677aa (1982). Defendants filed a motion to dismiss plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Because plaintiffs fail to allege any acts within the six-year statute of limitations, defendants' motion to dismiss will be granted.

BACKGROUND

In 1869, the Uinta Band of Indians in Utah was forced to relocate to the Uinta and Ouray Reservation site set aside for their use and occupation. In 1881, the White River Band of

- 2 -

Indians from Colorado moved to the Reservation as a result of a removal agreement between the federal government and the White River Band of Indians.  By 1902, the Uintas, the White River Band and the Uncompaghre Band of Indians from Colorado occupied the Reservation.  (Am. Compl. ¶ 29, 30.)

Pursuant to the Indian Reorganization Act (codified as amended at 25 U.S.C. § 461-79 (1934)), these three bands of Indians formed the "Ute Indian Tribe" which in turn created a Tribal Business Committee, composed of two members of each of the former bands of Indians.  The Ute Tribe also adopted a constitution and by-laws which enacted the policy that no property rights shall be acquired or lost through the vote of only two of the former bands.

In 1950, the Ute Tribe obtained a $32,000,000 takings judgment against the federal government related to Colorado lands previously occupied by the White River and Uncompaghre Bands. This Indian Claims Commission ("ICC") judgment was to be divided among the Ute Tribe members.  On March 31, 1954, the Ute Tribe held a General Council meeting where the council ratified the extraction of the members it called mixed-bloods, mostly former members of the Uinta Band, from the Ute Tribe.  The vote also called for a formal separation of the assets of mixed-bloods and members called full-bloods.

- 3 -

On August 27, 1954, as a result of the March 1954 vote, Congress passed the UPA.  Under the UPA, full-bloods were defined as Ute members whose ancestry was at least one-half Ute Indian and over one-half Indian.  Mixed-bloods were defined as Ute members who did not have sufficient Ute or Indian ancestry to qualify as full-bloods.  25 U.S.C. § 677a.  The UPA's definitions of mixed-bloods and full-bloods were based on the Ute General Council's definitions.  (Am. Compl. ¶ 47-48.)  The UPA formally distributed the Reservation's assets between the mixed-bloods and the full bloods.  The Act also terminated the mixed-bloods' rights to the $32,000,000 ICC judgment because, as a result of the UPA, the mixed-bloods were no longer considered members of the Ute Tribe.  Additionally, the UPA codified the positions that the federal government would not supervise the affairs of the mixed-bloods and terminated the mixed-bloods' status as federally recognized Indians.

Pursuant to the UPA, on April 5, 1954, the Secretary of Interior published in the Federal Register a list of the 490 mixed-bloods whose status as members of the Ute Tribe was terminated.  The Secretary of Interior subsequently published in the Federal Register the list of the 490 mixed-bloods and the corresponding federal policy of terminating supervision over the affairs of the mixed-bloods and their status as federally recognized Indians on August 27, 1961.

- 4 -

Plaintiffs seek a judgment declaring that the 1961 list of the 490 mixed-bloods unlawfully terminated their status as recognized Ute Indians and is void; resorting their rights retroactively to their Reservation assets wrongfully distributed under the UPA; restoring to their status as Uinta Indians the Uinta who were minors in 1961 and not listed among the 490; awarding them damages for their loss of status as Indians under the UPA, for breach of trust, and for the violation of the due process clause of the Fifth Amendment; and ordering an accounting of the $32,000,000 ICC judgment allocated to the Colorado bands of Ute Indians.

Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6) arguing, among other things, that the plaintiff's claims are barred by the statute of limitations, 28 U.S.C. § 2401 (2000).

DISCUSSION

When a party files a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004). A court considering a motion to dismiss for lack of jurisdiction must construe plaintiffs' complaint in plaintiffs' favor, accepting all inferences that can be derived from the facts

alleged.  Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  A motion under Rule 12(b)(6) to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "To that end, the complaint is construed liberally in the plaintiff's favor, and . . . plaintiff[] [receives] the benefit of all inferences that can be derived from the facts alleged."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

I.   DISPOSITION UNDER RULE 12(b)(1) OR 12(b)(6)

Ordinarily, a party's motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction cannot rest upon an assertion that an action is barred by the statute of limitations because the expiration of the limitations period is an affirmative defense and not a bar to jurisdiction.  See e.g., Gordon v. Nat'l Youth Work Alliance, 675 F.2d 356, 360 (D.C. Cir. 1982); see also 5 Wright & Miller, Federal Practice and Procedure § 1277 (2004).  However, because the United States enjoys sovereign immunity, Congress has the power to shape the conditions under which the United States can be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for

- 6 -

jurisdiction.")  When a plaintiff seeks to sue the United States, and where Congress has limited the conditions under which the United States can be sued, the expiration of the statute of limitations has been construed as a bar to the court's subject matter jurisdiction, and thus a proper subject for a motion to dismiss under Rule 12(b)(1).  For example, in Kendall v. Army Board for Corrections of Military Records, the D.C. Circuit affirmed the dismissal of a case for lack of jurisdiction given the expiration of the limitations period.  996 F.2d 362, 366 (D.C. Cir. 1993) (holding that the statute of limitations embodied in § 2401(a) is "a condition of federal court jurisdiction"); see also Soriano v. United States, 352 U.S. 270 (1957).  Traditionally, when a statute of limitations has been deemed jurisdictional, it has acted as an absolute bar and could not be overcome by the application of judicially recognized exceptions, see e.g., Soriano, 352 U.S. at 276, such as waiver, estoppel, equitable tolling, see Gordon, 675 F.2d at 360, fraudulent concealment, the discovery rule, see Nelson v. Int'l Paint Co., 716 F.2d 640, 645 (9th Cir. 1983) (cataloguing exceptions), and the continuing violations doctrine.  See Cato v. United States, 70 F.3d 1103, 1108-09 (9th Cir. 1995).

Other recent Supreme Court and D.C. Circuit decisions, however, have held that the equitable tolling doctrine applies to analogous statutes of limitations.  Irwin v. Dep't of Veterans

Affairs, 498 U.S. 89, 95-96 (1990) (holding "that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States"); Chung v. Dep't of Justice, 333 F.3d 273, 276-77 (D.C. Cir. 2003) (holding that the statute of limitations under the Privacy Act is not a jurisdictional bar and is subject to equitable tolling under Irwin's reasoning); see also Harris v. Fed. Aviation Admin., 353 F.3d 1006, 1013 n.7 (D.C. Cir. 2004) (noting that Irwin and Chung have cast doubt on the circuit's holding that § 2401 is a jurisdictional prerequisite to suit in federal court.)  In Irwin, the Supreme Court framed a general rule that all statutes of limitations are subject to a rebuttable presumption that equitable tolling applies.[1]  Irwin, 498 U.S. at 95-96.  In United States v. Brockamp, 519 U.S. 347 (1997), the Supreme Court held that the government successfully had rebutted the presumption and that an IRS code limitation was not subject to equitable tolling.  The Court held that based on the detailed technical language of the statute, iterations of the limitation in procedural and substantive form and the explicit listing of

---

[1] The Supreme Court also recognized that Title VII's statute of limitations, when the suit is against the United States, "is a condition to the waiver of sovereign immunity and thus must be strictly construed," seemingly retaining the jurisdictional nature of the statute of limitations.  Irwin, 498 U.S. at 94. But see Scarborough v. Principi, 541 U.S. 401, 413-14 (2004) (admonishing courts not to use the "jurisdictional" label for time prescriptions, even emphatic ones).

- 8 -

exceptions, Congress intended no equitable tolling to apply.  Id.
at 350-51.  The Court noted that the area of taxation carries
special policy and administrative considerations.  Id. at 352.

In Chung, the D.C. Circuit held that the Privacy Act
limitation section is subject to the general rebuttable
presumption of equitable tolling and is no longer a
jurisdictional bar, overruling Griffin v. United States Parole
Commission, 192 F.3d 1081 (D.C. Cir. 1999).  Chung, 333 F.3d
at 278 n.1.  Whether a statute of limitations is subject to the
rebuttable presumption or operates as a jurisdictional bar turns
upon "whether the injury to be redressed is of a type familiar to
private litigation."  Id. at 277 (noting that a Privacy Act claim
was "sufficiently similar to a traditional tort claim for
invasion of privacy to render the Irwin presumption applicable");
Brice v. Sec'y of Health & Human Servs., 240 F.3d 1367, 1372
(Fed. Cir. 2001).  In Chung, once the court found that the
presumption applied, the court held that the Privacy Act
limitations statute was more similar to the "ordinary statute of
limitations" found in Title VII than to the detailed
administrative scheme of Brockamp, and thus the presumption was
not rebutted.  333 F.3d at 277-78.

The statute at issue here provides that "every civil action
commenced against the United States shall be barred unless the
complaint is filed within six years after the right of action

first accrues."  28 U.S.C. § 2401(a).  Because the § 2401 statute
of limitations is part of a Congressional waiver of sovereign
immunity, it had occupied a unique position even among other
statutes of limitation that apply as to the government.  See
e.g., Walters v. Sec'y of Defense, 725 F.2d 107, 112 n.12 (D.C.
Cir. 1983) (noting that § 2401(a) "is an integral part of the
government's consent to suit, and as such is an issue of subject
matter jurisdiction"); Spannaus v. Dep't of Justice, 824 F.2d 52,
55 (D.C. Cir. 1987) (noting that "[u]nlike an ordinary statute of
limitations, § 2401(a) is a jurisdictional condition attached to
the government's waiver of sovereign immunity").  The Irwin and
Chung decisions have undermined the once settled jurisdictional
status of § 2401(a).  See Harris, 353 F.3d at 1013 n.7.

    Under the analysis in Chung, § 2401 is subject to this
rebuttable presumption for plaintiffs' claims seeking money
damages and an accounting as they are sufficiently similar to
private actions sounding in the traditional tort concept of
"seek[ing] monetary recovery from an injury."  Brice, 240 F.3d
at 1372.  The plaintiffs' claim for restoration of rights to
reservation assets is also subject to the § 2401 rebuttable
presumption, as it is analogous to seeking specific performance
in private litigation.

    Here, the government has not rebutted the presumption that
equitable tolling applies to this statute of limitations.

- 10 -

Section 2401 is a general catchall statute that applies to all civil actions against the government, and thus is not entwined in a detailed administrative scheme.  <u>See</u> <u>Brockamp</u>, 519 U.S. at 352-53.   Although the statute lists some minor exceptions, the statute lists no particularized procedural and substantive limitations as did the statute at issue in <u>Brockamp</u>.  <u>Id.</u>  Thus, an expiration of the statute of limitations on these claims for damages would not subject them to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), but would subject them to a motion to dismiss under Rule 12(b)(6) for failure to state a claim.  <u>See</u> <u>Gordon</u>, 675 F.2d at 360 (holding that because statutes of limitations create affirmative defenses, they must be raised on a Rule 12(b)(6) motion to dismiss, not under Rule 12(b)(1)); <u>Smith-Haynie v. District of Columbia</u>, 155 F.3d 575, 578 (D.C. Cir. 1998)(holding that a Rule 12(b) motion may raise an affirmative defense before defendant answers the complaint "when the facts that give rise to the defense are clear from the face of the complaint"); <u>Suckow Borax Mines Consol. Inc. v. Borax Consol. Ltd</u>, 185 F.2d 196, 204 (9th Cir. 1950) (holding that a "complaint may properly be dismissed on motion for failure to state a claim when the allegations in the complaint affirmatively show that the complaint is barred by the applicable statute of limitations"), <u>cert. denied</u>, 340 U.S. 943 (1951); <u>see also</u> 5 Wright & Miller § 1277 (noting that although under a

strict application of the rules, affirmative defenses are not properly raised in a motion to dismiss, most courts agree that when the facts giving rise to the affirmative defense are fully disclosed on the face of the compliant, the court may dispose of the case under Rule 12(b)).

Plaintiffs' claims to void the Secretary's 1961 regulation and restore the Indians to their former status, however, do not have an analogue in private litigation and are not injuries "of a type familiar to private litigation." Chung, 333 F.3d at 277. These claims are the type that the court in Chung thought would not be subject to the presumption, citing as an example the review of "informal agency rulemaking." Id. For these claims, the running of the statute of limitations is an absolute jurisdictional bar subject to a motion to dismiss under Rule 12(b)(1) and cannot be avoided by the application of equitable exceptions.

II.  APPLICATION OF § 2401

Section 2401(a) bars civil actions against the United States that are not filed within six years after the right of action first accrues.  28 U.S.C. § 2401(a).  An action accrues when it first comes into existence as an enforceable claim or right.  See United States v. Lindsay, 346 U.S. 568, 569 (1954); Lekas v. United Airlines, Inc., 282 F.3d 296, 299 (4th Cir. 2002).

- 12 -

Here, plaintiffs' injuries stem directly from the termination of their status as recognized Ute Indians and the disbursement of their Reservation assets.  Plaintiffs' cause of action first accrued when their status as recognized Indians was terminated and when the Reservation's assets were distributed. According to the pleadings, plaintiffs' terminated status occurred with the passage of the UPA in 1954.  Even assuming that plaintiffs' claim did not accrue until the most recent act alleged in their complaint - - the publication in the 1961 Federal Register of the list of terminated members (see Am. Compl. ¶ 14) - - the six-year statute of limitations expired before plaintiffs filed this action.  For the claims subject to the 12(b)(1) motion for lack of subject matter jurisdiction, this ends the inquiry and those claims will be dismissed.

The remaining claims may be subject to the equitable exceptions to the statute of limitations.  Chung, 333 F.3d at 278.  Only two exceptions are relevant to this case: the continuing violation doctrine and the equitable tolling doctrine.[2]

_____

[2]  In response to defendants' motion to dismiss, plaintiffs appear to invoke the discovery rule exception, under which the statute of limitations "does not begin to run until the plaintiff is aware of the injury or its cause."  See Nelson, 716 F.2d at 645.  Plaintiffs indirectly argue that the discovery exception to statutes of limitations should apply because "the defendants' arguments on the statute of limitations are merely presumed in the absence of reliable proof that [plaintiffs] knew of the misappropriation of their legal interest and property" and "the defendants' statute of limitation argument does not account for

- 13 -

A. <u>Continuing violation doctrine</u>

The continuing violation exception is invoked when a claim alleges that a wrongful act occurred during the statute of limitations but also includes other wrongful acts that occurred outside the statute of limitations.  When courts apply the continuing violation doctrine, the claim will not be barred provided that at least one wrongful act occurred during the statute of limitations period and that it was committed in furtherance of a continuing wrongful act or policy or is directly related to a similar wrongful act committed outside the statute of limitations.  <u>See</u> <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 907 (2d Cir. 1997).  The continuing violations occurring within the statute of limitations must be actual acts committed, rather than merely effects of prior acts.  <u>See</u> <u>Guerra v. Cuomo</u>, 176 F.3d 547, 551 (D.C. Cir. 1999) (finding that a complaint under the Rehabilitation Act premised on an employer's failure to accommodate an employee's disability presented not continuing violations of the Rehabilitation Act, but rather "what amounts to continuing effects of past discriminatory acts") (internal

_____

the numerous allegations that they concealed the fact of unlawful implementation. . . ."  (<u>See</u> Pls.' Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 25.)  While plaintiffs' opposition may imply that the discovery exception should apply, plaintiffs' amended complaint, however, fails to include factual assertions that support a discovery exception.  Plaintiffs did not allege in their complaint that circumstances beyond their control occurred which made plaintiffs unable to discover the underlying wrongful act until the present time.

- 14 -

quotations omitted); <u>Dixon v. Anderson</u>, 928 F.2d 212, 216 (6th
Cir. 1991)(finding that defendant's refusal to allow plaintiffs
to join a retirement plan happened outside of the applicable
limitations period and that the daily lack of participation in
the retirement plan is an effect of past discrimination, not an
act); <u>Dasgupta v. Univ. of Wisc. Bd. of Regents</u>, 121 F.3d 1138,
1140 (7th Cir. 1997) (holding that "[a] lingering effect of an
unlawful act is not itself an unlawful act"); <u>see also</u> <u>Press v.</u>
<u>Howard Univ.</u>, 540 A.2d 733, 735 (D.C. 1988) (deciding that a
breach of contract claim against an employer related to the
plaintiff's suspension of employment did not warrant the
application of the continuing violation doctrine because the
"alleged breach of contract . . . occurred only once" outside of
the limitations period and the defendant "was not re-suspended at
regular intervals during the [limitations] period").

     Here, the continuing violations doctrine cannot apply to
exempt plaintiffs from the statute of limitations period because
plaintiffs fail to allege that defendants committed any wrongful
acts during the limitations period prior to this action being
filed.  Plaintiffs allege injuries that occurred as a result of
the 1954 passage of the UPA and the 1961 Federal Register
publication.  (<u>See</u> Am. Compl. ¶ 48, 58, 67.)  Plaintiffs do not,
however, allege actual subsequent wrongful acts committed by the
defendants after 1961.  (<u>See</u> Am. Compl. ¶ 14.)  Rather than

- 15 -

citing additional wrongful acts that defendants committed in the last six years and that directly related to plaintiffs' terminated status, plaintiffs simply state that they continue to suffer as a result of the initial termination of their Ute Indian status and the disbursement of Reservation assets.  (See Am. Compl. ¶ 65-68.)  Defendants' continual failure to recognize plaintiffs' possible status as members of the Ute Tribe does not amount to contemporary wrongful acts.  Consequently, plaintiffs' complaint addresses the continuing effects of a possible past wrong, and not continuing wrongful acts.

B.    Equitable tolling

The running of the statute of limitations can be equitably tolled for a complaint filed after its expiration where a plaintiff demonstrates "(1) that he [petitioner] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 125 S. Ct. 1807, 1814 (2005)[3]; Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003).  Extraordinary circumstances are circumstances beyond the control of the complainant which make it impossible to file a complaint within the statute of limitations, United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000), including government conduct that "lulled" a

---

[3] While Pace addressed a petition for habeas corpus relief, the required elements for applications of equitable tolling in more traditional civil matters are the same.  See Young v. United States, 535 U.S. 43, 50 (2002) and Irwin, 498 U.S. at 96.

- 16 -

complainant into inaction, <u>Curtiss v. Mt. Pleasant Corr. Facility</u>, 338 F.3d 851, 855 (8th Cir. 2003), and falsities that mislead a petitioner.  <u>Delaney v. Matesanz</u>, 264 F.3d 7, 15 (1st Cir. 2000).

Plaintiffs' complaint does not include factual assertions which would warrant the application of the equitable tolling doctrine.  Plaintiffs have not presented any reason clarifying why they have not filed this claim earlier.  Plaintiffs simply maintain that they continue to suffer as a result of the wrongful termination of their status as members of the Ute Tribe and the erroneous distribution of Reservation assets.  (<u>See</u> Am. Compl. ¶ 65-68.)  Plaintiffs' claims demonstrate only that they continue to suffer the effects of allegedly wrongful acts committed by defendants in 1954 and 1961.  No extraordinary circumstances beyond plaintiffs' control are alleged.  The application of the equitable tolling doctrine in this instance, then, is not warranted, and the plaintiffs' claims must be dismissed for failure to satisfy the statute of limitations.

CONCLUSION

Plaintiffs allege that they have suffered as a result of the wrongful termination of their status as recognized members of the Ute Tribe.  Because plaintiffs' complaint does not allege any acts that the defendants committed within the six-year statute of limitations period, and because plaintiffs have failed to justify

- 17 -

the application of any exception to relieve them from their

having filed this action outside the limitations period,

plaintiffs' claims are time barred.  Defendants' motion to

dismiss will be granted.  An appropriate order accompanies this

Memorandum Opinion.

SIGNED this 27th day of January, 2006.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge